Report of Committee in favor of Mr. Campbell.
Assembly Chamber, April 2, 1869.
Mr. H. B. Smith, from the committee on privileges and elections, made a report in the words following:
The committee on privileges and elections, to which was referred the petition of. Frederick Zimmer, of the city of Hew York, praying, for the reasons therein set forth, that he might be declared elected and entitled to a "seat in this body, from the eighth Assembly district of the county of Hew York, in place of the Hon. Timothy J. Campbell, now occupying said seat, do respectfully report:
That the committee, by a resolution, required the contestant to serve upon the sitting member a statement of the facts and allegations upon which he claimed the seat of the sitting member, and that the sitting member serve a similar statement upon the contestant, which resolution was complied with by the -respective parties, and their *435 statements will be found on pages two and three' of the evidence. The allegations of the contestant, which were numerous and comprehensive, required the examination of a large number of witnesses; and from the voluminous evidence taken in this case the following facts and conclusions are submitted: The whole 'number of votes, cast in this Assembly district at the last November election for member of Assembly, was five thousand seven hundred and twenty-one, of which Timothy J. Campbell, by the certificate of the county canvassers, received two thousand six hundred and fifty-five, Frederick Zim-mer, two thousand four hundred and sixty-one, Thomas II. Ferris, four hundred and sixty-eight, Henry S. Jennings/ seventy-one, and scattering sixty-six, thus electing Mr. Campbell by one hundred and ninety-four votes.
The investigation in this case involved the consideration of two general topics, fraudulent voting or repeating, and. fraudulent and illegal canvassing. The first allegation of the contestant is to the effect, that stupendous frauds were practiced throughout this Assembly district by means of non-resident voters and repeaters. A number of witnesses were examined for the contestant to prove that persons were illegally registered in various districts, or voted in the names of other persons who were duly registered. Charles A. Pear-sall, Peter Wilmot, Michael Kelly, John IT. Deusenbury, Joseph F. Ellery and Patrick W. Hand, severally testified upon this subject. But their testimony, with the exception of. the evidence of Messrs. Ellery and Deusenbury, is either unworthy of credence .or is too extravagant and indefinite to sustain the allegation. Mr. Deusen-bury testified positively (see page 30 of the printed evidence) that there was one illegal vote cast for Mr. Campbell in the eleventh district, where he was inspector, by a non-resident or repeater who assumed the name of Thomas Duffy; and he .further testified that twenty or more non-residents were illegally registered in his district, but that none of them voted at that election. ,Mr. Ellery, who was examined at great length, testified that seventy^two illegal votes were receiyed in the sixth election district, of which forty-two4were cast by. non-residents, and thirty by persons who voted in the names of electors duly registered, and that thirty .of the non-residents were electioneering for the democratic ticket and working in the interest of Campbell. Mr. Ellery testified with evident fairness and candor, but was wholly unable to specify more than a few names, or to give particulars and sufficient evidence to warrant the rejection of the *436 district, or any definite number of votes. Even if the whole number of, fictitious and fraudulent votes, as claimed by the foregoing witnesses, both by positive .evidence and mere hearsay, was excluded from the canvass, Mr.- Campbell would still have a clear majority. As to the allegations that'the ballots for member of Assembly were illegally and fraudulently canvassed’, it appears from the testimony of three witnesses sworn in: behalf of the contestant, who, shortly after the November election, examined at the- station-house, where were stored all the'ballot-boxes of- this Assembly district, two of the boxes containing the Assembly ballots as they had been assorted into tallies at the official canvass, that 'these votes appeared to be assorted or twisted into tallies of ten, but they found Zimmer ballots mixed into Campbell tallies from one to five ballots -in every tally for Campbell, and some of Campbell’s tallies contained but eight or nine ballots, while some of the Zimmer tallies contained twelve or fifteen ballots. This testimony, even if uncontroverted or unimpeached, by the incumbent, is not sufficiently explicit and definite to characterize the whole * canvas's as fraudulent and illegal, or to sustain a demand for a specific relief by the-rejection of any particular district. The burden of proof is with the contestant, who holds the affirmative of-the issue. -The law presumes that public officers act honestíy; and positive evidence is necessai’37 to establish corruption and dishonesty in the conduct of the canvassers and inspectors. To remove this imputation of false counting, and to show that the ballot-boxes must have been tampered with at the station-house', nearly all the canvassers in the fourteen election districts were examined in behalf of the incumbent, and positively swore to the integrity of their action. In the first election district, which was a strongly republican district, Charles A. Pearsall, the republican inspector, testified (see pages one to eight of evidence) that at the canvass after the ballots for member of Assembly had been turned upon the table, there was a rush made by a crowd of outsiders against the counter, great excitement and confusion ensued, and at that moment Mr. Roberts, the democratic canvasser threw a handful of tickets upon the pile of uncanvassed ballots-Mr. Holmes, the republican canvasser, and Mr. Roberts, each contradicted this testimony, and testified that they canvassed the ballots honestty and correctly. • While the character of Pearsall is so seriously questioned by the testimony of John Tooker, William IT. Smith and other impeaching witnesses, that his evidence-is not worthy of full credence. During -the- canvass'-in :the fourth election district a *437 disgraceful and more serious ‘riot' and disturbance occurred. It appears, from the testimony of the perpetrators of this ruffianly act, that after the Assembly ballots were-emptied out of the box on the table, and before they were counted, the ■ gas-lights were suddenly extinguished, and a pistol-was immediately fired off.' It is disgraceful that a canvass of ballots should be interrupted-by such disorderly and riotous proceedings,- and it is especially reprehensible that the perpetrators of such dastardly acts’ should .escape u'nrebuked and unpunished, and should afterwards boast of their audacious villainy. After the gas wras re-lit, the unopened ballots' were put back into the box, and the box was sealed and afterwards sent to the police station. Eight days afterwards, by the direction of' the board- of supervisors, the inspectors canvassed the votes at the station-house, and returned five hundred and thirty-four for Zimmer, forty-one for Campbell, seventeen for Jennings, and fourteen for Ferris. Evidence was given by the contestant to show, that, during the darkness which ensued after the extinguishment of the gas, a handful of tickets was thrown upon the table. But the evidence oii'this subject is so indefinite that it is uncertain how the fraudulent tickets became mixed with the ballots, and we do not feel warranted in excluding or throwing out the votes of this district from the official returns. It was admitted that all the votes canvassed for Campbell and the other candidates were polled for them. In the seventh election district the contestant attempted to prove that the election returns were erroneous and false. The election returns showed three hundred and twenty-one votes for Campbell, and seventy-five for Zimmer. Eighty-eight witnesses were examined by the committee, who severally testified that they voted for Zimmer; but the testimony of at least fifteen of this number is too indistinct and contradictory to be accepted as proof of their votes. It was evident, however, from the testimony upon this subject, that cunning and designing men were working in the interest of Campbell, imposed upon these unsophisticated laboring men, and induced some of them to accept of and vote Campbell tickets by persuading them that they were Zimmer tickets. But. there is no evidence that any violence or threats were used to affect’.or interfere with the voting. McKinnon, the democratic inspector in that district, was conclusively proven to be a dishonest and unscrupulous man, whose reputation was that of a stuffier of ballot-boxes; but there is no evidence, except in one instance, that he perpétrated or attempted to perpetrate the fraudulent substitution of a ballot. There was also slight evidence of *438 other irregularities in that district.; hut the whole evidence upon this subject is not sufficient,, we think, to throw out and exclude the'district from the canvass. In the eighth election district a row was excited at.the instant the Assembly ballots had been emptied upon the table, and during- the confusion which ensued some ballots were swept upon the floor. After they had been replaced and counted, it was discovered that forty-six votes had been cast in excess of the roll list. The evidence .is not sufficiently positive and explicit to show in whose interest, this riotous proceeding was instigated, or to whose advantage in counting it inured. But the conduct of Brady the democratic canvasser in that district was especially reprehensible, since he attempted repeatedly to bribe the republican canvasser, and testified that the votes were honestly and correctly canvassed.
From the above findings it is apparent that the incumbent, Timothy J. Campbell, was duly elected member of Assembly from the sixth Assembly district of the county of New York at the last general election by a clear majority, and we are, therefore, of the opinion that he is entitled to retain his seat in this body. We therefore recommend the adoption of the following resolution:
Resolved, That Timothy J. Campbell was duly elected member of Assembly from the sixth Assembly district of the county of Hew York, at the last general election held on the 3d of November, 1868, and .that he is entitled to the seat in the Assembly now occupied by him.
W. W. HE GEM AN.
H. B. SMITH.
W. A. CONANT..
J. II. SELKKEG.
WM. W. MOSELEY.
Mr. H. B. Smith moved that the report of said committee be printed* and made a special order for Wednesday next, immediately after the reading of the journal.
Mr. Speaker put the question whether the House would agree to said motion, and it was determined in the negative; two-thirds of all the members present not voting in favor thereof. .
KepoRt Adopted. — MR. Campbell awarded the Seat.
Mr. Hitehman moved that the'report of the committee be adopted.
Mr. Speaker put the question whether the House would agree to said motion, and it was determined in the affirmative.
Assembly Journal, 1869, vol. 1, pages 816, 817, 818.and 819.